**AFFIRMED; Opinion Filed July 18, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00136-CR**

**CHERIE ROSANN JENSEN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-82945-2011**

## OPINION

Before Justices Bridges, Lang, and Myers
Opinion by Justice Lang

Appellant Cherie Rosann Jensen pleaded not guilty to driving while intoxicated. Following a bench trial, the trial court convicted appellant of that offense and assessed punishment at sixty days' confinement, suspended for one year, and a $400 fine. In two issues on appeal, appellant contends (1) the evidence is insufficient to support her conviction and (2) the trial court erred by not granting her motion for new trial because "the verdict is contrary to the law and the evidence" and "exculpatory evidence" was intentionally withheld by the prosecution. We decide against appellant on her two issues. The trial court's judgment is affirmed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Officer Jason Moses of the Plano Police Department testified at trial that at approximately 1:00 a.m. on March 31, 2011, he was on patrol in the area of northbound Central

Expressway ("Central") in Plano. He noticed a silver Honda Accord sitting with its lights on in the parking lot of a business that had been closed for several hours. As Moses approached the vehicle, it traveled from the parking lot onto the northbound Central service road. Moses testified the traffic light at 15th Street and northbound Central was red and the vehicle "stopped at the light beyond the stop line in the middle of the crosswalk," which Moses stated is considered a traffic violation. According to Moses, when the light turned green, the vehicle accelerated "at a fairly high rate of speed." Moses began following the vehicle. He stated the vehicle accelerated further to between 60 and 70 miles per hour on the service road, which has a speed limit of 45 miles per hour. Near Park Boulevard, Moses initiated a traffic stop by turning on his overhead lights. He stated the vehicle continued traveling in the center lane of the service road, "kind of weaving a little bit" in the lane. Then, the vehicle moved to the far left lane and entered highway U.S. 75. Moses followed the vehicle with his overhead lights and siren activated. He testified the vehicle eventually stopped on the shoulder of highway U.S. 75 just north of Parker Road. According to Moses, about one minute passed from the time he first activated his overhead lights until the time the vehicle stopped.

Moses approached the driver's side of the vehicle, noticing appellant was the driver and sole occupant. Moses stated appellant "had bloodshot, watery eyes, and there was a strong smell of, like, mouthwash coming from the vehicle." Further, Moses testified appellant told him she had consumed two martinis at around 5:00 p.m. Moses called for backup. In response to his call, two officers, Manthe and Muse, arrived together at the scene. Moses testified that at that point, Manthe, who was "in training," took over the investigation.

On cross-examination, Moses testified in part as follows:

Q. On this occasion, the bottom line is, you didn't really make an evaluation of whether or not Ms. Jensen was intoxicated. Is that fair?

–2–

A. I didn't do tests. I briefly talked to her. I couldn't have made a valid concrete whether [sic] or not—no.

Jason Manthe testified that at the time of the events in question he was an officer with the Plano Police Department and was certified to administer standardized field sobriety tests ("SFSTs"). In response to Moses's call, he arrived at the scene described above with his field training officer, Muse, and took over the investigation. Manthe testified appellant was in her vehicle and he approached from the passenger side. He stated appellant "appeared to have bloodshot eyes" and told him she had consumed two drinks. Manthe asked her to step out of the vehicle. Then, he administered three SFSTs: the "HGN test," the "walk-and-turn test," and the "one-leg stand." Manthe stated he had administered those tests before on "a few" occasions. He testified he gave appellant instructions before each test. According to Manthe, appellant indicated to him that she understood those instructions and did not mention any physical or mental problems that might inhibit her ability to perform the tests.

Manthe testified that in conducting the HGN test, he positioned appellant so that she was looking away from traffic and facing a wall. He stated the HGN test involves checking for six "possible clues" pertaining to "horizontal gaze nystagmus," which can indicate intoxication. Manthe testified appellant "demonstrated" all six of those. Further, Manthe testified (1) the walk-and-turn test involves eight "possible clues" and he observed seven of those while testing appellant and (2) the one-leg stand test involves four "possible clues" and appellant "demonstrated" three of those.

Manthe stated that based on his training, experience, and observations, he believed appellant was intoxicated. He placed her under arrest and transported her to jail. Upon arrival at the jail, appellant was taken to the "intoxilyzer room" and given the opportunity to provide a breath sample. According to Manthe, appellant refused to provide a breath sample.

–3–

A video recording of the traffic stop in question and Manthe's administering of the SFSTs was admitted into evidence. Additionally, a video recording of Manthe's interaction with appellant in the "intoxilyzer room" was admitted into evidence. Manthe stated he had viewed both video recordings earlier that day before coming to testify and the recordings were fair and accurate depictions of the events in question.

On cross-examination, Manthe testified in part as follows:

Q. (By [defense counsel]) Now, Officer, you seem to be suggesting today in your testimony that—or let me ask you this: Are you saying that you correctly performed the standardized field sobriety tests with respect to Ms. Jensen?

A. I believe so.
. . . .
Q. . . . Do you recall in the videotape approaching the—your training officer, Officer Muse, and telling him that this area where you were going to perform the field sobriety test on Ms. Jensen is slanted? Do you remember telling him that?

A. Yes, sir.

Q. And in his response—and whether it was—you were concerned about whether it was too slanted to be properly placed to perform the field sobriety tests; is that fair?

A. Right.

Q. And your training officer's response was to basically throw up his hands and say, "If you think it's slanted then you do," right?

A. Correct.

Q. And would it be fair to say that kind of left you not really sure whether it was a good place or not to perform the test?

A. Correct.

Q. And you didn't get much input from your training officer; is that fair?

A. Right.

Q. So, you came back to Ms. Jensen and she expressed concern about it being slanted, but you—but you went ahead and did the test. And the truth of the matter is, the manual says it should be a level surface that the test is performed on. Would you agree?

–4–

A. Correct.

Q. So, would you agree in that respect the reliability of the field sobriety test is uncertain?

A. Correct.

Q. Okay. And that's all I'm saying. Your training at that point—you hadn't even completed your training, correct?

A. Correct.

Q. And so, your training was relative to a police officer that's not a rookie. Your training was minimal. Your experiment [sic] was minimal. Is that true?

A. Correct.

Q. So, that's what I'm getting. The bottom line is, both with respect to the way the test was performed and the reliability of the results, would you agree it's uncertain?

A. Correct.

Q. In other words, you might still hold the opinion—well, you suspect that Ms. Jensen may have been under the influence of alcohol, but you're not saying that it eliminates every reasonable basis for doubt that the tests do?

A. Correct.

Q. In other words, there's still a reasonable question as to whether she was intoxicated or she's not?

A. Correct.

On redirect examination, Manthe was asked whether "any type of road slant" would affect the HGN test. Manthe stated "no, I don't think so."

After the State rested its case, the defense called Officer Muse as a witness. A video recording depicting the scene of the events in question during daylight was admitted into evidence. Muse testified that video recording fairly and accurately depicted the area in question.

Following the trial court's finding of guilt, appellant filed a motion for new trial.[1] At the hearing on that motion, Manthe and counsel for the defense were the only witnesses. Manthe stated that prior to trial in this case, he, Moses, and Muse met with the prosecutor and "reviewed the videotape." Additionally, Manthe testified in part as follows:

> Q. [by defense counsel] The fact is, that whatever certification you had, you're just not confident that the training you were provided was adequate to allow you to evaluate, effectively, Ms. Jensen's intoxication; is that fair?
>
> A. Correct.
>
> Q. And, in fact, you do not feel confident that your evaluation of Ms. Jensen's intoxication was well founded; is that fair?
>
> A. Correct.
>
> Q. And you continue to believe that there is serious reason to doubt whether Ms. Jensen was intoxicated. Is that also true?
>
> A. Correct.
>
> Q. And the other two officers who also saw the same tape the judge saw and were out there—saw the same driving themselves, saw the—who were out there at the scene and observed the same conduct, neither of those other officers testified that they believed that they had sufficient evidence to testify as to Ms. Jensen's intoxication; isn't that true? Isn't that what the prosecutor was told before you all met in this case?
>
> A. I believe so.
> . . . .
> Q. Well, Officer, bottom line is, the other two officers in your presence—you guys looked at the tape, you talked to the prosecutor, and the other two officers told the prosecutor that they really didn't have enough evidence to form an opinion about whether she was intoxicated or not, correct?
>
> A. Correct.
>
> On cross-examination, Manthe stated in part
>
> Q. [by prosecutor] Okay. Just to be clear, Officer Moses made the stop on the car, you took over the DWI investigation, and the other officer was your field training

---

[1] The record on appeal does not contain appellant's motion for new trial.

officer. Whose decision was it to determine whether there was probable cause to arrest the defendant that night?

A. That would have been mine and Officer Muse's.
. . . .
Q. Now, Officer Moses, who's the officer who made the traffic stop, did his role pretty much end once you came on scene and took over the investigation?

A. Yeah. Yes, ma'am.

Q. So, in that capacity as the officer who made the traffic stop, would he necessarily be the person to come in and testify as to whether or not he had an opinion about the defendant's intoxication level that night?

A. No, ma'am.

Q. That would have been you, right?

A. Correct.

Subsequently, the following exchange occurred between Manthe and the trial court:

THE COURT: On the day of trial I don't think you were as strongly opinionated that you weren't trained properly or that you weren't confident in your training; is that true?

[MANTHE]: Possibly, yes, sir.

THE COURT: You followed your training, is that correct, when you administered the field sobriety tests?

[MANTHE]: Yes, sir.

THE COURT: Did you do it the way you were trained?

[MANTHE]: Yes, sir.

THE COURT: Are you confident that what you testified to on the day of the trial, that was the truth?

[MANTHE]: Yes, sir.

THE COURT: So, when you say you saw six clues, did you see those six clues?

[MANTHE]: Yes, sir.

THE COURT: Today you seem less confident even than you were on the day of trial. I'm assuming maybe you're less confident than on the day you made the arrest. Is that fair to say? Have you begun to doubt yourself?

[MANTHE]: Perhaps.

THE COURT: I mean, do you know for sure whether you're doubting yourself?

[MANTHE]: Not that I recall—I mean, not that I know of.

THE COURT: Do you have the same opinion today as you did on the day of trial?

[MANTHE]: Yes, sir.

THE COURT: Do you have the same opinion today as you did on the day you made the arrest?

[MANTHE]: Yes, sir.

THE COURT: Do you believe that the defendant was intoxicated when you arrested her?

[MANTHE]: Yes, sir.

THE COURT: Do you believe that today.

[MANTHE]: I believe so, yes, sir.

THE COURT: Are you confident of that today?

[MANTHE]: I think so, yeah.

On redirect examination, Manthe testified as follows:

Q. [by defense counsel] You don't feel confident that you actually saw those clues and you didn't feel confident then that you saw the clues, right? Because you didn't have the adequate training to feel confident, right?

A. Possibly.

Q. I don't want to hear "possibly." I want to hear "yes" or "no." Either you say that the training wasn't adequate—you said you didn't feel confident about her performing these tests and the results of them; isn't that true?

A. Right. Yes, sir.

Q. At the trial—at the trial of this case you said you didn't know whether they were performed correctly, right? All of them, right?

A. Right.

Q. And as a matter of fact, when the prosecutor was asking you the questions originally, you would answer "yes, yes, yes." And then when you got to the part where you're talking about the clues, you would say in every case, "I think so." Right?

A. Correct.

Q. Because you didn't feel confident, right?

A. Right.

Q. What you said at trial and what you still believe after looking at the videotape more than once, you have a reasonable doubt about whether or not Ms. Jensen is guilty, right?

A. Right.
. . . .
Q. And the other training officer who was there, he wasn't confident if Ms. Jensen was guilty, either, based on what he saw, was he?

A. I'm not positive on that.
. . . .
Q. And the bottom line is, that in terms of clues, you're just not sure whether or not you observed the clues? And that was true that night, and it's been true the whole time, right?

A. Right.

On further cross-examination by the State, Manthe testified in part

Q. [by prosecutor] What was you[r] opinion of the defendant's condition on the night of the arrest?

A. That—I mean, at the time, that she was intoxicated.

Q. And when you testified at this trial, what was your opinion about whether or not you had probable causes [sic] to arrest the defendant that night?

A. That she was intoxicated.

Q. Okay. Now, today do you feel like that's being called into question—like you're calling any of that into question?

A. No, ma'am.

Finally, on subsequent redirect examination by defense counsel, Manthe testified in part

Q. Bottom line—bottom line is, you don't really know with any level of confidence whether or not there was probable cause to believe that Ms. Jensen was intoxicated. Isn't that a fair statement?

A. Right.

Defense counsel testified in part at the hearing

Two of the officers had seen the videotape and seen the other materials and said that they didn't have a basis for believing that the defendant was intoxicated. . . . None of that, which I believe is exculpatory and the officer testified was disclosed to the prosecution, was provided to me before the trial of this case.

Further, during closing argument, defense counsel asserted in part, "I think the evidence is overwhelmingly clear that this should have been disclosed and it wasn't, and it should have been."

Appellant's motion for new trial was denied by the trial court. This appeal timely followed.

## II. SUFFICIENCY OF THE EVIDENCE

In her first issue, appellant contends "[t]he evidence presented at trial is insufficient to sustain a verdict of guilty for driving while intoxicated" because "[t]he clear weight of the evidence suggests that a rational trier of fact could not have found the essential elements of DWI beyond a reasonable doubt."

The State responds "[t]he evidence presented at trial is sufficient to sustain a finding of guilt based on appellant's driving behavior, admission to drinking, poor performance on the SFSTs, and her refusal to provide a breath sample."

### A. Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). When the record supports conflicting inferences, a reviewing court must presume that the fact-finder resolved the conflicts in favor of the prosecution and defer to that determination. *Wise*, 364 S.W.3d at 903. The fact-finder exclusively determines the weight and credibility of evidence. *See id.*; *Wirth v. State*, 361 S.W.3d 694, 698 (Tex. Crim. App. 2012); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987) (trial judge acting as fact-finder can reject any or all testimony of witness, even if uncontroverted).

### B. Applicable Law

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04(a) (West 2011 & Supp. 2012).[2] "Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id*. § 49.01(2)(A) (West 2011). A conviction for the offense of driving while intoxicated may be supported solely by circumstantial evidence, which is as probative as direct evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

Evidence that may logically raise an inference that a defendant was intoxicated includes, among other things, slurred speech, bloodshot eyes, the odor of alcohol on the person or breath, unsteady balance, erratic driving, inability to perform field sobriety tests or follow directions, and any admissions by the defendant concerning what, when, and how much he had been drinking. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Cotton v. State*, 686

---

[2] Because the recent amendments to section 49.04 are not material to this appeal, we cite to the current version of the statute.

S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985). Further, a defendant's refusal to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the defendant's trial and considered as evidence of guilt. *See* TEX. TRANSP. CODE ANN. § 724.061 (West 2011); *Finley v. State*, 809 S.W.2d 909, 913 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *see also Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (evidence of refusal to submit to breath test is relevant to show "consciousness of guilt").

### *C. Analysis*

Appellant contends the SFSTs administered in this case were not conducted according to the "prescribed methods" in the "training manual *DWI Detection & Standardized Field Sobriety Testing: Student Manual*" (emphasis original). Specifically, appellant asserts the tests were conducted on "uneven ground." Additionally, appellant asserts Manthe testified he (1) "did not know whether he properly conducted the SFSTs," (2) "received substandard training in respect to making a determination of intoxication," (3) "did not properly apply relevant standards," and (4) "is not certain whether he had probable cause to arrest appellant." In support of those assertions, appellant cites excerpts from the trial and hearing testimony set out above. Further, appellant argues her speech was "clear and coherent—not slurred," she "did not smell of alcohol," and "aside from walking along an uneven crack in the shoulder of a busy highway toward oncoming traffic, [she] exhibited no signs of loss of balance." According to appellant, "[e]ven taken in the light most favorable to the verdict, the evidence only tends to show that Appellant's driving was inattentive, that she was unable to balance on a crack in the road, ten feet from highway traffic, and that she was understandably nervous."

As described above, the record shows Manthe testified (1) he believed that he performed the SFSTs correctly, (2) appellant demonstrated all six "possible clues" on the HGN test, seven

–12–

of eight "possible clues" on the walk-and-turn test, and three of four "possible clues" on the one-leg stand test, and (3) based on his training, experience, and observations, he believed appellant was intoxicated. Even assuming without deciding that the record supports conflicting inferences as to Manthe's testimony respecting the SFSTs, we presume the trial court resolved any conflict in favor of the State and defer to that determination. *See Wise*, 364 S.W.3d at 903. Further, Manthe testified he did not think "any type of road slant" would affect the HGN test. Appellant does not otherwise explain how the HGN test was not properly administered. Finally, in addition to the evidence respecting the SFSTs, the record shows appellant (1) "stopped beyond the stop line" at a traffic light, (2) accelerated quickly and exceeded the speed limit on the service road, (3) had "bloodshot, watery eyes," (4) admitted having two drinks earlier that evening, and (5) refused to take a breath test. *See Kirsch*, 306 S.W.3d at 745; *Cotton*, 686 S.W.2d at 142 n.3; *Finley*, 809 S.W.2d at 913. It was the sole province of the trial court as fact-finder to determine the weight and credibility of the evidence. *See Wise*, 364 S.W.3d at 903. We conclude the evidence in the record is sufficient to support appellant's conviction.

We decide appellant's first issue against her.

### III. DENIAL OF MOTION FOR NEW TRIAL

In her second issue, appellant contends the trial court erred by not granting her motion for new trial because (1) the "verdict" is contrary to the law and the evidence and (2) "exculpatory evidence" was withheld from appellant.

The State responds that the trial court properly denied appellant's motion for new trial because (1) legally sufficient evidence supported the conviction and (2) "the State did not withhold any favorable evidence from Appellant and the evidence Appellant claims to be favorable would not have changed the outcome of the trial."

–13–

## A. Standard of Review

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was "clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Id*. "This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling." *Id*. "The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Id*. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Id*.; *see also Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (trial court, as fact-finder, is sole judge of witness credibility at hearing on motion for new trial).

## B. Applicable Law

"The Supreme Court in *Brady v. Maryland* held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "The Supreme Court later explained that *Brady* essentially created a federal constitutional right to certain minimal discovery." *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011). To establish a claim under *Brady*, a defendant must demonstrate "(1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; [and] (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial

–14–

would have been different." *Ex parte Miles*, 359 S.W.3d at 665 (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)).

Rule 21.3 of the Texas Rules of Appellate Procedure provides in part that a defendant in a criminal case must be granted a new trial when "the verdict is contrary to the law and the evidence" or "evidence tending to establish the defendant's innocence has been intentionally destroyed or withheld, thus preventing its production at trial." TEX. R. APP. P. 21.3(e), (h).

### C. Analysis

In support of her contention that "the verdict is contrary to the law and evidence," appellant "incorporates" her arguments pertaining to her first issue and relies solely on those arguments. In addressing appellant's first issue above, we concluded the evidence is sufficient to support appellant's conviction. Accordingly, we conclude the trial court did not abuse its discretion by denying appellant's motion for new trial on this ground.

Next, we address appellant's contention respecting "withholding of exculpatory evidence." According to appellant,

> At the hearing on the motion for new trial, Officer Manthe testified he watched the arrest video just prior to trial with the prosecutor and the other two officers present at the scene, and that neither of those two officers would be able to testify to the intoxication of Appellant. The fact that two officers certified in administration of SFSTs and present at the scene of the arrest were unable to testify to Appellant's intoxication after watching the arrest video was not disclosed to Appellant's counsel prior to trial. This evidence, if disclosed and developed at trial, would likely have led to a different outcome at trial.
> At Appellant's trial, only Officer Manthe was questioned about his evaluation of the Appellant's intoxication. If the other two, more experienced officers, each having just viewed the arrest video had been asked and testified to their inability to make a determination of Appellant's intoxication, the combined weight of the evidence would have weighed much more heavily against the fact-finder's eventual determination of guilt. The testimony of two trained and certified police officers, both of whom watched the arrest video just before trial and yet were unable to testify to the Appellant's intoxication, would have substantially benefitted Appellant's case. Officer Manthe was the only witness able to testify that the tests were not conducted properly, he was not certain that the SFSTs were reliable, and that he may have lacked probable cause to make an arrest. The evidence intentionally withheld by the prosecution sufficiently

–15–

undermined the fairness of the trial and has sufficiently undermined any confidence in the outcome of the proceeding.

Appellant's only citation to the record in support of her argument directs us to the following testimony of Manthe:

Q. And you continue to believe that there is serious reason to doubt whether Ms. Jensen was intoxicated. Is that also true?

A. Correct.

Q. And the other two officers who also saw the same tape the judge saw and were out there—saw the same driving themselves, saw the—who were out there at the scene and observed the same conduct, neither of those other officers testified that they believed that they had sufficient evidence to testify as to Ms. Jensen's intoxication; isn't that true? Isn't that what the prosecutor was told before you all met in this case?

A. I believe so.

Appellant does not explain, and the record does not show, how this testimony supports her contention that Moses and Muse "were unable to testify to the Appellant's intoxication." Rather, the testimony cited by appellant, on its face, addresses only whether it is true that "neither of those other officers testified that they believed that they had sufficient evidence to testify as to Ms. Jensen's intoxication." Appellant does not explain how lack of testimony as to a particular matter constitutes evidence that must be disclosed by the State, nor does appellant cite authority for that position.

Even assuming without deciding that the testimony cited by appellant can be construed as an assertion by Manthe that it was communicated to him that neither Moses nor Muse "believed that they had sufficient evidence to testify as to Ms. Jensen's intoxication," the record shows Manthe also testified at the hearing

Q. And the other training officer who was there, he wasn't confident if Ms. Jensen was guilty, either, based on what he saw, was he?

A. I'm not positive on that.

Further, contrary to appellant's assertion that "[a]t Appellant's trial, only Officer Manthe was questioned about his evaluation of the Appellant's intoxication," the record shows Moses was asked at trial, "On this occasion, the bottom line is, you didn't really make an evaluation of whether or not Ms. Jensen was intoxicated. Is that fair?" Moses replied, "I didn't do tests. I briefly talked to her. I couldn't have made a valid concrete whether [sic] or not—no."

On this record, we conclude the trial court reasonably could have concluded appellant did not meet her burden to show evidence was withheld by the State. *See Ex parte Miles*, 359 S.W.3d at 665; TEX. R. APP. P. 21.3(e); *see also Okonkwo*, 398 S.W.3d at 694; *Clarke v. State*, 305 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (trial judge at hearing on motion for new trial reasonably could have disbelieved portion of witness's uncontroverted testimony that provided the only proof of essential element as to alleged *Brady* violation). Therefore, we conclude the trial court did not err by denying appellant's motion for new trial. *See Riley*, 378 S.W.3d at 457.

We decide appellant's second issue against her.

## IV. CONCLUSION

We decide against appellant on her two issues. The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
120136F.U05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHERIE ROSANN JENSEN, Appellant

No. 05-12-00136-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4, Collin County, Texas
Trial Court Cause No. 004-82945-2011.
Opinion delivered by Justice Lang. Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 18th day of July, 2013.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE