PD-0352&0353-15

RECEIVED IN
COURT OF CRIMINAL APPEALS

May 1, 2015

ABEL ACOSTA, CLERK

**PETITION FOR DISCRETIONARY REVIEW**
OF
**NOS. 01-14-00042-CR;**
**04-14-00195-CR**[1]

**IN THE COURT OF CRIMINAL APPEALS**

---

**DUSTIN WAYNE GLENN**
*Appellant*

v.

**THE STATE OF TEXAS**
*Appellee*

---

On Appeal from Cause Numbers CV-70368 & CV-70369
From County Court at Law No. 3 of Galveston County, Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

---

APRIL 29, 2015

**DAVID SUHLER**
P.O. Box 540744
Houston, Texas 77254-0744
(713) 522-1220
drsuhler@davidsuhler.xohost.com
Bar Card No. 19465900
Attorney for Appellant

---

[1] This PDR involves the same defendant and is closely related to another PDR filed for Cause Nos. 01-13-00640-CR & 01-13-00641-CR, filed on the same day.

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT

Mr. Dustin Wayne Glenn

DEFENSE COUNSEL FOR
GUILTY PLEAS

Fred Garrett
1908 Rosharon Rd. #605
Alvin, Texas 77511

DEFENSE COUNSEL
ON APPEAL

David Suhler
P.O. Box 540744
Houston, Texas 77254

PRESIDING JUDGE

Honorable Kerri Foley
County Court at Law No. 3
Galveston County, Texas

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................. 2

TABLE OF CONTENTS.................................................................................... 3

INDEX OF AUTHORITIES............................................................................... 4

STATEMENT REGARDING ORAL ARGUMENT................................................... 5

STATEMENT OF THE CASE............................................................................. 5

STATEMENT OF PROCEDURAL HISTORY........................................................... 5

GROUND FOR REVIEW.................................................................................. 6

STATEMENT OF FACTS.................................................................................. 6

SUMMARY OF THE ARGUMENT....................................................................... 7

ARGUMENT................................................................................................ 8

    **GROUND ONE............................................................................8**
    **IF THE REASON FOR PLEADING GUILTY WAS COUNSEL'S WRONG ADVICE, IS
    CONFIDENCE IN THE OUTCOME UNDERMINED? ..............................................8**

PRAYER FOR RELIEF.................................................................................. 11

APPENDICES ............................................................................................ 12

# INDEX OF AUTHORITIES

## Cases

*Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005) ............................................. 8

*Ex Parte Glenn*, No. 01-14-00042, 01-14-00195 (Tex.App.—Houston [1ˢᵗ Dist.] 2015)..

7, 8

*Lopez v. State*, --- S.W.3d ---- (Tex.App.—Houston [1ˢᵗ Dist.] 2015)........................ 7, 8, 9

*Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984) .................... 8, 9

## Other Authorities

*N.P. v. Georgia*, No. 2014-CV-241025, Statement of Interest of the United States (Mar. 13, 2015).................................................................................................................... 9

Southern Center for Human Rights, *Department of Justice Files Statement of Interest In Cordele Right to Counsel Case*, March 13, 2015, https://www.schr.org/DOJ................. 9

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Appellant, Mr. Dustin Glenn, gave a nolo contendere plea to Criminal Trespass and Resisting Arrest in County Court at Law number 3 in Galveston County, Texas. (M.A.J. State's Exhibits 3 & 4). He received a sentence of fifteen days in county jail and received credit for the twenty-five days he had already served. (M.A.J. State's Exhibits 3 & 4). At that time, Mr. Glenn was serving a five year term of community supervision for two Aggravated Assault offenses. (M.N.T. R.R. at 17; C.R. 12CR2237 & 12CR2238 at 8). The State filed motions to adjudicate in the 405th District Court on the same afternoon that Mr. Glenn pleaded nolo contendere to the misdemeanor offenses in county court. (C.R. 12CR2237 at 16). Mr. Glenn was sentenced to twelve years in prison. (M.A.J. C.R. 12CR2237 at 30, 12CR2238 at 34).

## STATEMENT OF PROCEDURAL HISTORY

On January 24, 2013, Mr. Glenn pled nolo contendere to two misdemeanor charges. (M.A.J. State's Exhibits 3 & 4). On July 24, 2013, Mr. Glenn filed Writs of Habeas Corpus for the misdemeanor charges, which were denied. (See Findings and Order Cause No. CV-70368, CV-70369). On January 8, 2014, Mr. Glenn filed a notice of appeal to the first court of appeals. Briefs were filed and an opinion was handed

down on February 26, 2015. (See Appendix A). No motion for rehearing was filed. Mr. Glenn now files this petition for discretionary review.

## GROUND FOR REVIEW

### GROUND ONE

**IF THE REASON FOR PLEADING GUILTY WAS COUNSEL'S WRONG ADVICE, IS CONFIDENCE IN THE OUTCOME UNDERMINED?**

### STATEMENT OF FACTS

Mr. Glenn has a long history of mental health issues. (See R.R. Exhibits to the Motion for New Trial – defendant medical records). Mr. Glenn's jail docket counsel saw him for a brief period before facilitating a guilty plea on the first appearance. (M.N.T. R.R. at 17). Trial counsel told Mr. Glenn he could go home that night even though he was on felony probation. (M.N.T. R.R. at 18-20, 63-64, M.A.J. R.R. at 58). Mr. Glenn stated the reason he pled guilty to the misdemeanor charges against him was because he was told he could go home if he pled guilty. (M.N.T. R.R. at 63). He had innocence claims to the misdemeanor charges. (M.N.T. R.R. at 61-63). The trespassing charge was given to him while at his sister's house, where he was living at that time, had always been allowed there, and known his whole life. (M.N.T. R.R. at 62). His belongings were there and he received mail there. (M.N.T. R.R. at 63). The resisting arrest charge was given because officers had to wake him up as he was asleep. (M.N.T. R.R. at 62).

# SUMMARY OF THE ARGUMENT

The first court of appeals ruled that prejudice did not exist because appellant issued no evidence that showed he would have insisted on going to trial but for his counsel's wrong advice. *Ex Parte Glenn*, No. 01-14-00042, 01-14-00195, 7-8 (Tex.App.—Houston [1ˢᵗ Dist.] 2015). This is the wrong standard to apply for the prejudice prong of the *Strickland* test, and the first court of appeals is issuing conflicting opinions regarding this standard. *See Lopez v. State*, --- S.W.3d ---- (Tex.App.—Houston [1ˢᵗ Dist.] 2015); *Ex Parte Glenn*, No. 01-14-00042, 01-14-00195 (Tex.App.—Houston [1ˢᵗ Dist.] 2015). Further, Mr. Glenn did show evidence that he would not have pled guilty. (M.N.T. R.R. at 18-20, 63-64, M.A.J. R.R. at 58).

This court should recognize that Mr. Glenn did present evidence that his plea was based on wrong advice, showing prejudice. This court should also clarify the conflicting standards used by the first court of appeals.

## ARGUMENT

### GROUND ONE

### IF THE REASON FOR PLEADING GUILTY WAS COUNSEL'S WRONG ADVICE, IS CONFIDENCE IN THE OUTCOME UNDERMINED?

Mr. Glenn established prejudice in his misdemeanor case by stating the reason he pled guilty was his counsel's advice that he could go home if he pled guilty. The prejudice prong of ineffective assistance of counsel claims is established if the probability that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005); *Lopez v. State*, --- S.W.3d ----, 7 (Tex.App.—Houston [1st Dist.] 2015).

In its opinion affirming the denial of Mr. Glenn's writs of habeas corpus for his misdemeanor charges, the first court of appeals determined that the prejudice prong in the *Strickland* test was not met because "appellant has presented no evidence that ... [he] would have insisted on proceeding to trial in both misdemeanor cases." *Ex Parte Glenn*, No. 01-14-00042, 01-14-00195, 7-8 (Tex.App.—Houston [1st Dist.] 2015). However, Mr. Glenn did present evidence that he would have requested trial. He stated the reason he pled guilty was because his counsel told him he could go home, indicating if he was not told that, he would not have pled guilty. (M.N.T. R.R. at 18-20, 63-64, M.A.J. R.R. at 58). His statements are evidence that he would not have pled

8

guilty that day and in all likelihood, would have insisted on a trial to prove his innocence.

The first court of appeals decision in this case seems to apply a different standard than the decision in *Lopez*, which was issued on the same day as this case. (See Appendix B). This court should provide the appellate court guidance in its application of this test.

Further, the first prong of the *Strickland* test was met in this case. In Galveston County, the jail docket has defense counsel encourage pleas on the first setting. (M.N.T. R.R. at 17). Mr. Glenn had innocence claims and a history of mental health issues. (M.N.T. R.R. at 61-63, 65-69). The jail docket representation of the mentally challenged in Galveston County is similar to the juvenile representation in the Cordele Judicial Circuit, where the Dept. of Justice issued a statement of interest regarding fair representation. *N.P. v. Georgia*, No. 2014-CV-241025, Statement of Interest of the United States (Mar. 13, 2015). "There is no way that any lawyer, even an experienced juvenile lawyer, could meet with a child, interview the child, investigate the case, determine the legal and factual issue, assess the case and provide a child with informed, professional advice about how to resolve the case in 15 minutes". Southern Center for Human Rights, *Department of Justice Files Statement of Interest In Cordele Right to Counsel Case*, March 13, 2015, https://www.schr.org/DOJ. The mentally challenged in Galveston receive, at best, token representation, but in reality, they simply are not represented.

This court should find that the prejudice test was met because but for his trial counsel's wrong advice, Mr. Glenn would not have pled guilty. This court should remand this case for a finding that counsel was ineffective.

**PRAYER FOR RELIEF**

For the foregoing reasons, we respectfully request this court to remand this case back to the first court of appeals to apply the correct standard and recognize evidence of prejudice.

Respectfully submitted,

David Suhler_____
**DAVID SUHLER**
Attorney for Appellant
State Bar No. 19465900
P.O. Box 540744
Houston, Texas 77254-0744
713-522-1220

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that a copy of Appellant's Brief was electronically emailed to the Appellate Division of the Galveston County District Attorney's office on the 29th day of April, 2015. This petition for discretionary review complies with Texas Rule of Appellate Procedure 9.4(i)(3) and contains 1,559 words.

David Suhler_____

# APPENDICES



**APPENDIX A**

**Opinion issued February 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-14-00042-CR**
**NO. 01-14-00195-CR**

———————————

## EX PARTE DUSTIN WAYNE GLENN

---

**On Appeal from the County Court at Law No. 3**
**Galveston County, Texas**
**Trial Court Case Nos. CV-70368, CV-70369**

---

## MEMORANDUM OPINION

Appellant, Dustin Wayne Glenn, challenges the trial court's orders denying

his applications for writs of habeas corpus.[1]  In his sole issue, appellant contends

---

[1]     *See* TEX. CODE CRIM. PROC. ANN. art. 11.09 (Vernon 2005) (providing person
        confined or restrained from conviction of misdemeanor offense may apply for writ

that the trial court erred in denying him relief from two judgments of conviction for the misdemeanor offenses of criminal trespass[2] and resisting arrest[3] on his asserted ground that he had received ineffective assistance of counsel in both cases.

We affirm.

## Background

On October 22, 2012, after appellant pleaded guilty to two separate felony offenses of aggravated assault with a deadly weapon,[4] the 405th District Court of Galveston County deferred adjudication of his guilt and placed him on community supervision for five years.

On January 24, 2013, appellant, while on community supervision, pleaded nolo contendere in the trial court to the misdemeanor offenses of criminal trespass and resisting arrest. In his plea papers, appellant acknowledged that his counsel, appointed to defend him in the trial court, had "fully discussed" his cases with him. Also, appellant understood that because he was on community supervision, "[his] plea[s] of guilty or nolo contendere [could] result in the revocation of [his]

---

of habeas corpus); *see also State v. Collazo*, 264 S.W.3d 121, 126 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd) (same).

[2] *See* TEX. PENAL CODE ANN. § 30.05 (Vernon Supp. 2014); appellate cause number 01-14-00195-CR; trial court cause number CV-70369.

[3] *See* TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2011); appellate cause number 01-14-00042-CR; trial court cause number CV-70368.

[4] *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 2011); appellate cause numbers 01-13-00640-CR & 01-13-00641-CR; trial court cause numbers 12CR2237 and 12CR2238.

2

community supervision or parole resulting in [his] further confinement." Appellant's counsel also signed the plea papers, affirming that he had "fully explained all of the matters contained in [the papers] to appellant."

Prior to accepting appellant's pleas, the trial court admonished appellant of the consequences of his pleas. It then accepted appellant's pleas, found him guilty of each offense, and sentenced him to confinement for fifteen days in each case, with the sentences to run concurrently.

Appellant subsequently filed his post-conviction applications for writs of habeas corpus, arguing that he entered his pleas involuntarily because he "did not receive accurate advice [regarding] the effect of [his pleas]" on his community supervision. According to appellant, his counsel in the trial court, "knowing that [appellant] was on felony probation, advised [him] that [he] could get out of jail [following his pleas] and confer personally with [his] felony probation officer in order to minimize the effect of his conviction[s] [for criminal trespass and resisting arrest] on [his] probation." However, appellant was not released from confinement after pleading guilty, and the State moved to adjudicate his guilt on the two felony offenses of aggravated assault with a deadly weapon. As grounds for adjudication, the State alleged, among other grounds, that appellant's commission of the offenses of criminal trespass and resisting arrest violated the conditions of his community supervision. The 405th District Court adjudicated appellant's guilt and

3

sentenced him to confinement for twelve years for each offense of aggravated assault with a deadly weapon, with the sentences to run concurrently.

In his unsworn declaration, attached to his applications for writs of habeas corpus, appellant explained:

> I first met [my counsel in the trial court] when I was brought in for the misdemeanor jail docket for resisting arrest and criminal trespassing charges. I had never met him before. . . . [Counsel] spent twenty to thirty minutes with me. He asked me for an explanation for the[] charges and I told him that I was not guilty. I was not trespassing at my sister's place of residence because I had been living there for at least three weeks when the police came. I told. . . . [counsel] that all my property was at my sister's and I received my mail: bills and bank statements, there. . . . I explained to . . . [counsel] that I was intoxicated the night that the police came for me, I had fallen asleep and I woke up being roughly handcuffed by the police. I explained to . . . [counsel] that I did not fight or resist the police, but merely asked for an explanation of what was going on and why I was being arrested.
>
> . . . [Counsel] explained to me that, if I plead guilty to the misdemeanor offenses, I could get out of jail, . . . go see my probation officer and explain to [him] what had happened to me. . . . [counsel] knew I was on felony probation because I told him about it and he told me that he had my paperwork with him. I relied on . . . [counsel] telling me that I would get out of jail if I plead guilty, but, if I didn't plead guilty, then I would be in jail for a long time. . . .
>
> But I did not get out of jail that day . . . . Later that day, . . . [t]he sergeant told me that "they" had violated my probation that same day and put a $120,000 bond on me. . . .
>
> A week or two later, I received a copy of the motion to get me off probation. . . . I learned that two of the things that "they" were violating me for were the misdemeanor charges that I told . . . [counsel] that I did not do.

4

The trial court denied appellant's applications.

## Standard of Review

An applicant for a writ of habeas corpus bears the burden of proving his allegations by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We view the evidence in the light most favorable to the trial court's ruling, and we afford almost total deference to the court's determination of historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We afford the same amount of deference to the trial court's rulings on "application of law to fact questions" that involve an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d at 819. In such instances, we use an abuse of discretion standard. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). However, if resolution of those ultimate questions turns on an application of legal standards, we review those determinations de novo. *Ex parte Peterson*, 117 S.W.3d at 819. We will affirm the trial court's decision if it is correct on any theory of law applicable to the case. *Ex parte Primrose*, 950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd).

## Ineffective Assistance of Counsel

In his sole issue, appellant argues that he entered his pleas of nolo contendere in both misdemeanor cases involuntarily because he received ineffective assistance of counsel.

To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2014); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); *Ex parte Karlson*, 282 S.W.3d 118, 128–29 (Tex. App.—Fort Worth 2009, pet. ref'd). A plea is not voluntarily and knowingly entered if it is made as a result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

We apply the two-pronged test of *Strickland v. Washington* to challenges to pleas premised on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)). Under S*trickland*, in order to establish ineffective assistance of counsel, a defendant must show (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Any

6

allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). The "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In the context of pleas, the focus of the prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. Therefore, in order to satisfy *Strickland*'s prejudice prong, when a defendant has pleaded guilty or nolo contendere, he "must show that there is a reasonable probability that, but for counsel's errors, he *would not have pleaded guilty* and *would have insisted on going to trial*." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (emphasis added); *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

Here, although appellant asserts in his unsworn declaration that he "relied on" counsel's advice, appellant has presented no evidence that, but for his counsel's deficient performance, he would not have pleaded nolo contendere and

7

would have insisted on proceeding to trial in both misdemeanor cases. Notably, appellant did not include in his unsworn declaration such an assertion. Moreover, appellant did not allege in his applications for writs of habeas corpus that he would have proceeded to trial.

Without evidence in the record that appellant would have insisted on proceeding to trial, he cannot establish the second prong of the *Strickland* test. *See Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005) ("'If the defendant cannot demonstrate that but for his counsel's deficient performance, he would have [availed himself of trial], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484, 120 S. Ct. 1029, 1038 (2000)); *see, e.g.*, *Kliebert v. State*, Nos. 01-12-00757-CR, 01-12-00758-CR, 01-12-00759-CR, 01-12-00760-CR, 2013 WL 3811491, at *3 (Tex. App.—Houston [1st Dist.] July 18, 2013, pet. ref'd) (mem. op., not designated for publication) (holding defendant failed to establish prejudice where he "presented no evidence, either by testimony or affidavit, that, but for counsel's alleged deficiency, he would not have pleaded guilty"). Accordingly, we hold that the trial court did not abuse its discretion in denying appellant habeas relief.

We overrule appellant's sole issue.

**Conclusion**

We affirm the trial court's orders denying appellant habeas corpus relief.



Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).

9

**APPENDIX B**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-01079-CR**

———————————

**LENIN SALDADO LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1403196**

**O P I N I O N**

Lenin Saldado Lopez pleaded guilty to aggravated robbery without a recommended sentence. Following a presentence investigation, the trial court sentenced Lopez to 30 years' confinement. Lopez filed a motion for new trial,

arguing that his trial attorney provided ineffective assistance of counsel. The motion was denied.

In one issue, Lopez argues that his attorney provided ineffective assistance during the punishment phase of his trial and the trial court, therefore, erred in denying his motion for new trial. Specifically, Lopez alleges that his attorney failed to investigate his background or gather and present mitigating evidence at the sentencing hearing and, instead, left it to Lopez—who is alleged to be "significantly developmentally disabled [with] various mental health problems"— to prepare for the sentencing hearing unassisted.

Because we conclude that the attorney was deficient and that Lopez established prejudice as a result of the ineffective assistance, we reverse the trial court's order and remand for a new sentencing hearing.

**Background**

Lopez was indicted on the felony offense of aggravated robbery. He was alleged to have injured an individual while he and another man robbed him at gunpoint. When Lopez and the other man were arrested, they had two robbery victims' wallets and clothing items in their possession, as well as a large sum of cash.

Lopez hired an attorney to represent him. During plea negotiations, the State offered a plea deal that included a 15-year sentence, which was the minimum

applicable sentence. Lopez rejected the offer. On the day of trial, his attorney filed a motion to withdraw. Counsel stated that "[g]ood cause exists for withdrawal [because counsel] is unable to effectively communicate with Lenin Lopez so as to be able to adequately represent" him and that Lopez "has failed to comply with the terms of the employment agreement [because he] has failed and refused to pay for legal services per the terms of his contract."

Counsel simultaneously filed a motion for continuance, stating that he needed to complete trial preparations, which had been delayed due to his handling of another case. Counsel again stated that he had not been fully paid. The motion for continuance also asserted that "the Court's records indicate that the Defendant has retained other counsel, so [the attorney moving for a continuance] has not prepared for trial." The motion does not identify where in the record there is an indication of dual representation. Nor do we find one.

There are no orders in the record granting or denying these two motions. Instead, the record reveals that—on the same day the motions were filed and Lopez was scheduled for trial—he pleaded guilty without a sentencing recommendation. The trial court accepted the guilty plea, ordered a presentence investigation (PSI), and scheduled a sentencing hearing to occur two months later.

On the same day as the withdrawal motion and the guilty plea, Lopez's attorney sent him a letter telling him to accumulate mitigation evidence. He told

3

Lopez to collect "'good guy' letters" and to give them directly to the probation department when he was interviewed as part of the presentence investigation; to meet with counsel on the day of the sentencing hearing 15 minutes before it was scheduled to begin; and to bring to the hearing people "to support you." The letter also asked that Lopez "get current" on his fee payments.

The only letter Lopez gave the PSI investigator was from his girlfriend. She focused her comments on her belief that Lopez was innocent. Her letter did not focus on the issue actually before the trial court, which was the appropriate sentence to be imposed, given that Lopez had already admitted guilt.

Lopez's counsel did not appear at the pre-scheduled sentencing hearing. The hearing was reset for a couple of days later. Again, he did not appear. Without an attorney there to counsel him, Lopez indicated to the court that he wanted to "back out" of his plea. Lopez's bond was immediately revoked, and he was taken into custody to await sentencing. The trial court indicated that he viewed Lopez, at that point, as a "flight risk." Lopez remained in custody until the sentencing hearing was eventually held. His plea was not changed.

At the sentencing hearing, trial counsel presented Lopez's defense in a single sentence:

> Your Honor, my client has instructed me to advise the Court that whatever sentence is given, he would want it to be the absolute minimum because he believes he's going to be a great role model for

4

both his son and his wife and the community at large. And other than the statement from Mr. Lopez, that's all I have.

Counsel informed the court, "Your Honor, there's no evidence that's being offered today, no deletions, additions, objections, et cetera to the PSI." Thus, no mitigation evidence was presented to the court outside of what had been provided to the PSI investigator.

At the hearing, the State directed the Court to a written statement from the victim, describing the panic and fear he continues to feel as a result of Lopez robbing and beating him with a gun. The victim requested that Lopez receive the maximum available sentence so that he could not rob again or "kill innocent people."

Without either side offering any other aggravating or mitigating evidence, the State requested a sentence between 30 and 35 years. The trial court sentenced Lopez to 30 years. After sentencing, his trial counsel successfully withdrew his representation.

Lopez was appointed new counsel, who filed a motion for new trial. Lopez argued that his trial counsel had provided ineffective assistance of counsel, which caused his guilty plea to be involuntarily made and his presentation of mitigating evidence deficient. Specifically, he contended that his counsel failed to present mitigating evidence of Lopez's past mental-health issues.

5

Trial counsel did not testify at the new-trial hearing. Instead, his affidavit was admitted into evidence. The affidavit stated that the attorney was unaware of Lopez's having any mental health issues.

Lopez presented additional mitigation evidence at the new-trial hearing. This evidence included affidavits from two individuals who averred that Lopez's trial counsel never contacted them about testifying on his behalf at the sentencing hearing, from his girlfriend who stated that trial counsel did not assist in preparations for the sentencing hearing, and from his mother who stated that trial counsel never returned her phone calls. Additionally, the trial court admitted into evidence the letter from Lopez's attorney telling him to gather mitigating evidence and to submit it directly to the PSI investigator.

Lopez also presented the trial court with two written reports. The first was a "synopsis of psychosocial interview" conducted by a psychosocial worker in the Harris County Public Defender's Office after he retained new counsel. The second was an earlier "psychological screening" signed by a Harris County-affiliated psychologist. Lopez argued that his trial counsel should have incorporated the mental-health information into his mitigation defense at the sentencing hearing.

The trial court denied Lopez's new-trial motion. On appeal, Lopez contends that the trial court erred by denying his motion but, in doing so, he limits his

argument to the assertion that trial counsel was deficient during the punishment phase of his trial.

## Standards of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Andrews*, 159 S.W.3d at 102. The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Allegations of ineffective assistance of counsel must be firmly rooted in the record. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Escobar v. State*, 227 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We do not limit our review to a single portion of the representation; instead, we look to the totality of the representation to determine the effectiveness of counsel. *Strickland*, 466 U.S. at 688–89, 695, 104 S. Ct. 2065, 2069; *Thompson v. State*, 9

7

S.W.3d 808, 813 (Tex. Crim. App. 1999); *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In viewing counsel's performance, we indulge a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065; *Thompson*, 9 S.W.3d at 813. We will conclude that counsel was deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews*, 159 S.W.3d at 101. If the record is silent as to counsel's strategy, the presumption of effectiveness is sufficient to deny relief. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

Given that Lopez raised his ineffective assistance claim in a motion for new trial, we analyze the issue on appeal as a challenge to the trial court's denial of his new-trial motion and review it under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Thus, we reverse only if the trial court's decision to deny the motion for new trial was arbitrary or unreasonable, viewing the evidence in the light most favorable to the trial court's ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Starz*, 309 S.W.3d at 118. A decision is arbitrary or unreasonable if no reasonable view of the record could support the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Charles*, 146 S.W.3d at 208.

### *Strickland* First Prong

To satisfy the first prong of the *Strickland* test to establish ineffective assistance of counsel, Lopez had the burden to demonstrate that his attorney's professional services fell below an objectively reasonable standard. *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064.

**A.    Counsel's duty to actively represent his client**

Criminal defendants have a constitutional right to counsel. *Strickland*, 466 U.S. at 684, 104 S. Ct. at 2063; U.S. CONST. amend. VI. This requires more than the physical presence of an attorney at the proceeding:

> That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough . . . . [T]he right to the assistance of counsel . . . envisions counsel[] playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

*Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063.

Counsel is expected to use his professional judgment to prepare for trial and to advise his client. *Id.* at 680–81; 104 S. Ct. at 2060–61. An "attorney who represents a criminal defendant is 'bound by professional duty to present all available evidence and arguments in support of (the client's) positions and to contest with vigor all adverse evidence and views.'" *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 787,

93 S. Ct. 1756, 1762 (1973); *Wenzy v. State*, 855 S.W.2d 47, 50 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

Unless a motion to withdraw has been granted, a criminal defense attorney has a continuing duty to represent his client to the fullest of his ability. *See Wenzy*, 855 S.W.2d at 50; TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(c) (1990).

**B.      Counsel's duty to investigate and evaluate mitigation evidence**

"The decision whether to present witnesses is largely a matter of trial strategy." *Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). We defer to trial court's determination of trial strategy and his choice of witnesses so long as any conceivable strategy can be imagined for the actions taken or not taken. *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).

But "counsel can only make a reasonable decision to forgo presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful." *Lair*, 265 S.W.3d at 595. Thus, "[c]ounsel is ineffective when he fails to investigate and interview potential punishment witnesses, despite their availability and willingness to testify on appellant's behalf . . . ." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 521–24, 123 S. Ct. 2527, 2535–36 (2003). Counsel's failure to uncover and present mitigating evidence "cannot be justified as a tactical decision when defense counsel has not conducted a thorough investigation of the

defendant's background." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) ("Defense counsel's failure to investigate and call *any* punishment witnesses amounts to deficient performance." (emphasis added)); *see also Wiggins*, 539 U.S. at 527–28, 123 S. Ct. at 2538 (noting that trial counsel's discovery of some favorable mitigating evidence may require counsel, as part of provision of reasonable professional services, to investigate further for additional mitigating evidence).

## C. The evidence concerning counsel's investigation and presentation of mitigation evidence

Lopez's motion for new trial alleged that trial counsel failed to present mitigating evidence at the sentencing hearing. Lopez attached a report to his motion that indicated a history of mental health issues. At the hearing, Lopez introduced into evidence an affidavit from his trial counsel responding to the allegation. Counsel stated, "I am unaware of Mr. Lopez having any mental health issues or history."

The new-trial motion complained of other areas of mitigation evidence being omitted as well. Lopez contended that counsel was deficient by failing to inform the trial court that he "has been affected by tragedy and instability during his childhood and has people who know him to be a good person." Lopez attached to the motion an affidavit from his girlfriend, stating that trial counsel "never did anything to prepare for the PSI" and "never asked us any questions about [his]

background." She averred that trial counsel "never wanted to see any of the letters from friends of the family," which he previously told them to send directly to the probation officer. She stated that the letters were sent "without any help from the lawyer." She further stated, "We owed him money so he never did any work on the case and would not even meet with us at his office."[1] Trial counsel's affidavit did not respond to these allegations.

The trial court admitted additional evidence at the hearing that had not been included with the new-trial motion. This included letters from two people stating that they had not been contacted by trial counsel before the sentencing hearing and that, had they been contacted, they would have been willing to testify positively about Lopez. There was an additional affidavit from Lopez's mother stating that trial counsel "would not return our calls," she and counsel had never spoken, and she was unable to attend the sentencing hearing because of recent surgery. The final piece of evidence admitted at the new-trial hearing was the letter from trial counsel to Lopez written the day he pleaded guilty, instructing him to collect "'good guy' letters," deliver the letters directly to the probation officer, and bring people to the sentencing hearing who "support" him.

---

[1] Also attached to the motion were two letters that Lopez alleges he and his girlfriend unsuccessfully attempted to have included in the PSI. The final attachment was the partially redacted psychological screening report from several years earlier.

None of this evidence, other than the mental health report and the girlfriend's affidavit, was presented to the trial court until the new-trial hearing, meaning that it was submitted after the trial attorney prepared his affidavit. As a result, counsel's affidavit does not respond to these assertions. Likewise, because trial counsel did not testify at the new-trial hearing, the trial court did not receive any evidence directly responsive to the affidavits. Nonetheless, the record is not devoid of evidence concerning counsel's preparation for the sentencing hearing.

Counsel's letter to Lopez, sent after counsel had unsuccessfully attempted to withdraw his representation and Lopez had pleaded guilty, instructed Lopez to collect supportive letters, give them directly to the PSI investigator for inclusion in the PSI report, and meet counsel at the sentencing hearing. He gave no indication that he was willing to assist with interviewing potential witnesses or reviewing their statements before they were submitted.

The reasonable inferences from counsel's letter are that counsel had assigned to Lopez the task of identifying and contacting potential character witnesses and determining what should, and should not, be included in their character-reference letters—without any assistance from counsel—and that counsel's next involvement in the case would not be until the hearing. *Cf. Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007) (noting that "an inference is a conclusion reached by considering other facts and deducing a logical

consequence from them" while speculation "is mere theorizing or guessing about the possible meaning of facts and evidence presented."). This inference is further supported by the affidavits from Lopez, his girlfriend, and mother, as well as by the letters from acquaintances of Lopez who were never contacted by counsel.

The delegation of the important task of developing mitigation evidence was inconsistent with trial counsel's professional obligation to conduct a reasonable investigation into his client's background and to evaluate whether the information discovered would be helpful in mitigating against the State's evidence on punishment. *See Williams v. Taylor*, 529 U.S. 362, 396, 120 S. Ct. 1495, 1514–15 (2000); *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Wenzy*, 855 S.W.2d at 50; TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(c) (1990).

Further, the PSI report was provided to trial counsel at least 10 days before the sentencing hearing, and it indicated that Lopez had a below-normal IQ and mental-health diagnoses. That information should have raised an issue for counsel whether additional investigation was necessary to uncover more mitigating evidence. *Wiggins*, 539 U.S. at 527–28, 123 S. Ct. at 2538. At a minimum, it should have raised the issue of whether Lopez was capable of effectively evaluating the mitigation evidence available to him without attorney assistance. As the United States Supreme Court stated in *Atkins v. Virginia*, 536 U.S. 304, 320–

14

21, 122 S. Ct. 2242, 2252 (2002), severely mentally deficient defendants "may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes."

Moreover, by telling Lopez to bring supporters directly to the hearing just 15 minutes before it was to begin, it is evident that counsel would not have had sufficient time to interview and prepare these witnesses not only for direct examination but also for cross-examination. And, without that information, he would not have had the information necessary to determine whether, on balance, Lopez's defense would be aided by each witness.[2] *See Wiggins*, 539 U.S. at 527–28, 536, 123 S. Ct. 2538, 2543; *Lair*, 265 S.W.3d at 595 ("[C]ounsel can only make a reasonable decision to forgo presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful.").

Even absent direct testimony from trial counsel regarding his strategy in preparation for the sentencing hearing or strategy during the hearing, we conclude that the only reasonable inference from the evidence presented to the trial court,

---

[2] It is not even clear that Lopez could have reasonably understood his counsel's letter to state that he should bring potential witnesses to the hearing to testify on his behalf. The letter states only that Lopez should bring people "to support" him. Lopez reasonably could have understood the letter to suggest that he bring people to observe the proceeding and offer him non-participatory, emotional support—an action that would not have added to his mitigation defense.

15

including counsel's own letter to his client, is that counsel did not participate in collecting mitigation evidence, did not review the mitigating evidence his client collected without his assistance, and did not present any mitigation evidence on his client's behalf at the hearing. The evidence, thus, rebuts the presumption of effectiveness of counsel, *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065, and demonstrates that counsel failed to perform as a reasonably competent attorney. *Andrews*, 159 S.W.3d at 101.

Accordingly, we conclude that counsel's performance fell below an objective standard of reasonableness and, as a result, the first prong of the *Strickland* test was met in support of Lopez's new-trial motion.

### *Strickland* Second Prong

In addition to demonstrating that his attorney's services fell below an objectively reasonable standard, Lopez also had to establish that defense counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Rivera*, 123 S.W.3d at 32. This is the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

For the punishment phase, our inquiry is whether there is a reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's deficient performance. *Wiggins*, 539 U.S at 534, 123 S. Ct. at 2542; *Lair*, 265 S.W.3d at 595. Prejudice is established if the probability

16

that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Andrews*, 159 S.W.3d at 102. Our "ultimate focus" is whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

As this Court has previously noted, "[t]he sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Shanklin*, 190 S.W.3d at 165. Thus, the adversarial process is hindered if the factfinder is denied access to powerful mitigating evidence, leaving only the aggravating factors for its consideration. *See Williams*, 529 U.S. at 395–99, 120 S. Ct. at 1514–16 (holding that defendant was prejudiced by counsel's ineffectiveness in not investigating or presenting mitigating evidence, including "nightmarish" childhood, repeated past sexual assaults during his youth, extremely low IQ, and several positive character references from professionals in community who had witnessed defendant excel in structured environments).

When defense counsel presents "no evidence of mitigating factors . . . to balance against the aggravating factors presented by the State" and fails to do so because he did not investigate mitigating factors or contact potential mitigation

17

witnesses, there is prejudice. *Shanklin*, 190 S.W.3d at 165. Prejudice exists, in that context, because there is not even a possibility of the factfinder considering mitigating evidence. *See id.* at 165–66 ("We conclude that appellant has demonstrated prejudice in this case . . . . [D]efense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even a single mitigating factor."); *Lair*, 265 S.W.3d at 595–96.

Here, trial counsel presented no mitigating evidence, not even Lopez himself. Two people averred that they would have testified favorably for Lopez had they been contacted by counsel, but they were never contacted. Even though the PSI report contained information indicating that Lopez had a troubled background, including intellectual deficiencies that impacted his general intelligence, school performance, and decision-making, counsel failed to highlight even one piece of this information to the trial court.[3] *See Williams*, 529 U.S. at 395–99, 120 S. Ct. at 1514–16; *Wiggins*, 539 U.S. at 534, 123 S. Ct. at 2542.

The only "evidence" counsel offered at the sentencing hearing was his one-sentence statement to the trial court that his client wanted the court to know that he considered himself to be a good role model. This statement was made in an evidentiary vacuum: counsel provided absolutely no evidence to support Lopez's

---

[3] In fact, based on his affidavit that he was unaware of any mental-health issues, Lopez raises the issue whether counsel had read the PSI report before the sentencing hearing.

belief that he could be a good role model. He failed to offer examples of past good deeds, positive interactions, supportive friends or family, or any other mitigating evidence. *See Wiggins*, 539 U.S. at 536–38, 123 S. Ct. at 2543–44 (concluding that defendant was prejudiced by counsel's failure to present any of large amount of available mitigating evidence to counter obvious aggravating factors, including violent nature of charged offense and defendant's lengthy criminal history). Without any context or basis for counsel's statement, it was little more than empty rhetoric.

Had trial counsel investigated and brought mitigating factors to the trial court's attention, that information would have been weighed against the aggravating factors in the case, which were significant, including the violence that was used to commit the robbery, indications that Lopez had been involved in other, recent robberies, and a criminal history that included drug possession, a separate theft conviction, a trespass conviction, and a previous aggravated robbery that resulted in a three-year sentence. Instead there was nothing to weigh against the strong aggravating factors.

By neither investigating nor presenting evidence for the trial court to consider in assessing punishment, trial counsel deprived Lopez of even a possibility of developing a mitigating defense. Thus, prejudice is established. *See Shanklin*, 190 S.W.3d at 165–66 ("We conclude that appellant has demonstrated

prejudice in this case, even though we cannot say for certain that appellant's character witnesses would have favorably influenced the jury's assessment of punishment. We have no doubt, however, that defense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even a single mitigating factor." (internal citations omitted)).

We therefore conclude that the trial court erred in denying Lopez's motion for new trial on punishment and sustain Lopez's sole issue on this appeal.

**Conclusion**

We have concluded that Lopez's counsel was deficient and that the deficiency prejudiced Lopez during sentencing. Accordingly, we reverse the trial court's order denying Lopez's new-trial motion and remand the cause for a new punishment hearing pursuant to article 44.29(b) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West 2013); *Lair*, 265 S.W.3d at 596 (remanding for new punishment hearing). Because Lopez's appeal was limited to the issue of punishment, we have not reviewed the trial court's determination of guilt. That portion of the trial court's judgment has not been challenged and remains unchanged.

Harvey Brown
Justice

20

Panel consists of Justices Keyes, Higley, and Brown.

Publish.  TEX. R. APP. P. 47.2(b).