**Opinion filed October 31, 2017**



## In The

# Eleberth Court of Appeals

_____

## No. 11-15-00271-CR

_____

## JUSTIN BRYAN BELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 26444A**

### M E M O R A N D U M   O P I N I O N

The jury convicted Justin Bryan Bell of aggravated kidnapping (Count I), sexual assault (Count II), and assault family violence (Count III) and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty years for Count I, ten years for Count II, and ten years for Count III. The jury also assessed a fine of $5,000 for Count I, a fine of $3,000 for Count II, and a fine of $10,000 for Count III. The trial court sentenced Appellant accordingly and ordered that the three sentences be served concurrently.

In a single issue on appeal, Appellant asserts that he received ineffective assistance of counsel. We affirm.

*Background Facts*

This case arises from a domestic dispute between Appellant and M.B., the victim. For six years, Appellant and M.B. were involved in a tumultuous, intermittent dating relationship. M.B. testified that on May 20, 2013, she was living in Lewisville but traveled to Abilene to make a loan payment. M.B. arranged to meet with Appellant because he promised to help her with the payment. M.B. stayed two nights with Appellant—at two different motels.

On the morning of May 22, M.B. told Appellant that she was going home. M.B. testified that Appellant became so enraged that he started choking her on the bed. M.B. screamed for Appellant to stop, but he put his hand over her mouth and continued the assault. Appellant then began removing M.B.'s clothes. Appellant continued the assault by digitally penetrating M.B. A knock on the motel room door by housekeeping staff interrupted the assault.

John McFarland, an employee of the motel where Appellant and M.B. were staying, testified that, around 9:30 a.m., he knocked on the motel door to inquire if the occupants were staying another night. At that time, John heard a woman say that, "everything is not ok." Then at 11 a.m., John went with another employee, Susan McFarland, and knocked on the motel room door to give a second reminder of the checkout time. Both John and Susan testified that the woman inside the room slapped on the window and screamed, "[H]elp me."

At some point, M.B., "grabbed what [she] could," and "ran out the door." Appellant followed her. M.B. testified that she threw her keys across the parking lot "[t]o get [Appellant] away from [her]" and jumped into her vehicle to lock the doors. However, Appellant returned with the keys, got into the driver's seat, and drove away. M.B. tried to exit the vehicle, but she was unsuccessful because Appellant

2

pulled her back into the van. One of the housekeepers testified that M.B. looked like she was trying to exit the van.

After Appellant passed his usual exit, he told M.B. that "[h]e was going to take [her] out and finish what he started. This caused M.B. to secretly dial 9-1-1 and hide her phone behind her. M.B. testified that she was naming roads aloud, hoping emergency personnel could find her. They ended up out in the county on a dead-end, dirt road where M.B. again tried to escape. M.B. testified that she did not know where she was, but she tried to get help by running to a house located on the road. However, Appellant came up behind her and dragged her "by the hair" back to the van.

M.B. testified that the 9-1-1 call abruptly ended when Appellant found the phone and took the battery out of it. Eventually, Appellant drove M.B. back into town to his mother's house. Once there, Appellant said that he would leave her alone if she did not call the police. While they were loading M.B.'s belongings into her van, Appellant suddenly hit himself on the head with a picture and told M.B., "It's not going to go down like you think it is." Appellant then called 9-1-1 alleging that M.B. had broken into his house. M.B. took off in her vehicle and called 9-1-1. Officer Tim Pipes, of the Abilene Police Department, responded and transported Appellant to the law enforcement center.

Officer Stacey Cisneros, a detective with the Abilene Police Department, interviewed Appellant at the law enforcement center. Appellant did not testify during the guilt/innocence phase of trial, but the trial court admitted his voluntary interview into evidence. In the interview, Appellant admitted that M.B. requested him to get off of her and that he did not immediately comply with her request. Additionally, Detective Cisneros testified that Appellant told him that Appellant wished he would have let M.B. out of the van.

*Analysis*

In a single issue, Appellant asserts that he received ineffective assistance of counsel at trial. Specifically, he contends that his trial counsel failed to (1) investigate and present exculpatory evidence, (2) call witnesses to contradict the State's case, and (3) effectively cross-examine witnesses with prior inconsistent statements.

In order to establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014). Courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

"[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Under normal circumstances, "[d]irect appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If

trial counsel did not have an opportunity to explain his action, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Appellant first contends that his trial counsel was ineffective by not investigating potential exculpatory evidence on Appellant's cell phone. He asserts that this deficiency precluded him from presenting an adequate defense. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see Ex parte Bowman*, No. PD-0208-16, 2017 WL 2799976, at *10 (Tex. Crim. App. June 28, 2017). However, when the record is silent as to the scope of the attorney's investigation, we may not assume that no such investigation was made. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

Appellant alleges on appeal that the call log from his cell phone would show that M.B. called Appellant on the day of the assault. He asserts that those calls would have proved that he did not detain M.B. against her will and left her in a safe environment. The cell phone was booked into evidence in a separate case almost two years after the offense at issue. After the State rested its case-in-chief in the underlying trial, Appellant's trial counsel requested access to the phone "[t]o see if [M.B.] called . . . on that day, May 22, between the hours of . . . 12:22 [and] 2:30." Outside the presence of the jury, the trial court initially permitted Appellant to access the phone, but he was unsuccessful in remembering the password for it. The trial court then allowed Deputy Craig Griffis of the Taylor County Sheriff's Office to conduct a forensic examination of the phone in an attempt to retrieve the call log. The record does not indicate what results, if any, this forensic examination yielded.

Appellant asserts that, under prevailing professional standards, his trial counsel should have requested the cell phone evidence and forensic examination prior to trial. However, Appellant has not provided a record on appeal showing the existence of exculpatory evidence in the call log, and the record is devoid of any explanation of his trial counsel's actions or strategy. *See Rylander*, 101 S.W.3d at 111; *Thompson*, 9 S.W.3d at 814. Without such evidence on direct appeal, we cannot conclude that Appellant's trial counsel was deficient or that the result of the proceeding would have been different.

Next, Appellant briefly contends that his trial counsel failed to call witnesses to contradict the State's case. The decision to call a witness is generally a matter of trial strategy. *Lopez v. State*, 462 S.W.3d 180, 185 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)). The Court of Criminal Appeals has held that the "failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)).

In this case, Appellant has failed to make such a showing. Appellant makes no argument on appeal regarding the identity, availability, or benefit of particular witness testimony. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."); *see also Bowman*, 2017 WL 2799976, at *10. Therefore, we cannot conclude that trial counsel's decision not to call additional witnesses was not a matter of sound trial strategy. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) ("Even if such evidence existed, defense counsel could have reasonably determined that the

6

potential benefit of additional witnesses . . . was outweighed by the risk of unfavorable counter-testimony.").

Appellant also contends that his trial counsel failed to effectively cross-examine testifying witnesses. Specifically, he asserts that trial counsel failed to impeach "some witnesses" on cross-examination with inconsistent prior recorded statements. The record shows that Appellant's trial counsel cross-examined each of the State's witnesses, but it is silent regarding trial counsel's reasons for cross-examining the witnesses in the manner that he did. Furthermore, Appellant has not cited to any prior recorded statements of witnesses that are inconsistent with their trial testimony.

The absence of trial counsel's reasoning in conducting cross-examination precludes a finding that counsel was "objectively deficient." *Ex parte McFarland*, 163 S.W.3d 743, 754 (Tex. Crim. App. 2005). "Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Id.* at 756. "[C]ross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Id.*

All of Appellant's claims of ineffective assistance of counsel are inherently matters of trial strategy. The record before us does not demonstrate that trial counsel's representation fell below an objective standard of reasonableness because there has been no inquiry into trial counsel's trial strategy. *See Thompson*, 9 S.W.3d at 812–13. Even without such an inquiry, the record before us does not show that trial counsel was deficient because Appellant has not cited to any exculpatory evidence that trial counsel failed to adduce at trial. Finally, the absence of exculpatory evidence supporting his ineffective assistance claim precludes us from finding that the result of the proceeding would have been different but for trial counsel's alleged deficiencies. We overrule Appellant's sole issue.

7

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE


October 31, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.