**Arsenio Carlos CLARKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00390–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 4, 2010.

**842**

Bob Wicoff, Houston, for appellant.

Alan Curry, Houston, for state.

Panel consists of Justices ANDERSON, FROST, and MIRABAL.*

### OPINION ON REMAND

KEM THOMPSON FROST, Justice.

Appellant asserts that the trial court abused its discretion by denying his motion for new trial based on appellant's contention that the prosecutor violated the United States and Texas Constitutions by deliberately deceiving the trial court during the punishment phase. Appellant alleges the prosecutor allowed evidence concerning an extraneous offense to remain in the pre-sentence investigation report, even though the prosecutor allegedly knew that this evidence was false. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2004, appellant moved to Texas from New York to live with the family of the child complainant, T.M., a fourteen-year old girl. Appellant is the nephew of T.M.'s step-father. T.M.'s mother and step-father had agreed to help appellant improve his life by allowing him an opportunity to move in with their family and work in their family business.

While living in his uncle's home, appellant shared a bedroom with T.M.'s brother. One day, T.M. walked into her brother's bedroom, where appellant was playing a video game. Appellant got up, closed the bedroom door, and began to wrestle with T.M. After a few moments, appellant pushed T.M. onto a mattress that was on the floor. While holding T.M. down, appellant removed their clothing, and forced T.M. to engage in sexual intercourse. When he was finished, appellant stood up, got dressed, and shrugged at T.M. T.M.

* Senior Justice Margaret G. Mirabal sitting by assignment.

immediately ran to her own bedroom. Too scared to tell her mother or step-father about the incident, T.M. decided that she would handle the matter by herself. Approximately five days later, T.M. attempted to confront appellant and tell him that he could not engage in sexual intercourse with her, but he again sexually assaulted her. After the second assault, T.M. again remained silent, and tried her best to avoid appellant.

On Super Bowl Sunday of 2005, T.M. was watching television in her bedroom, while the rest of the family watched the game in the family room. Appellant walked into T.M.'s bedroom, closed the door, and locked it. Appellant laid down on the floor and told T.M. that he wanted to watch the game with her. T.M. told him, "no," and tried to get him to leave. Appellant, who was much stronger than T.M., forced her against the wall, and again forced her to engage in sexual intercourse. When he was finished, appellant got up and left the room. T.M. closed her bedroom door and locked it.

Several days later, T.M. went looking for her brother in his bedroom. Appellant was there, and her brother left the room. Appellant closed the door, sat T.M. down on the mattress, and began to whisper to her. T.M. got up and tried to open the bedroom door to leave. T.M.'s step-father was standing outside the door, and he asked T.M. what they were whispering about. T.M. finally told her step-father about the incidents. T.M.'s step-father called T.M.'s mother, who immediately came home. Initially, T.M. had a difficult time telling her mother about the incidents. Eventually, however, T.M. recounted some of the things that appellant had been doing to her. T.M.'s mother was furious and confronted appellant. Appellant told her that the sexual intercourse was consensual. T.M. was taken to a hospital to be examined.

Appellant was arrested and charged with the felony offense of sexual assault of a child. He pleaded "guilty" without an agreed recommendation from the State. The trial court found appellant guilty of the charged offense and ordered a pre-sentence investigation ("PSI") report. At the beginning of the sentencing hearing, the trial court asked appellant if he had reviewed the PSI report and gone over it with his attorney. Appellant stated that he had done so. The trial court asked appellant's counsel if he knew of any errors in the PSI report. Counsel stated that he and his client had "no problems" with the PSI report, except for the "conjecture on behalf of the victim's mother." Counsel was referring to the following part of the victim impact statement in the PSI report:

[The complainant's mother] reported her niece, sister of the defendant, called her the day she took the complainant to the hospital. She reported her niece lives with her grandmother in New York, not with her mother. She stated her niece was very apologetic about her brother and stated she hated him for what he had done to the complainant. [The complainant's mother] stated she had an intuition that perhaps the defendant's sister had a similar experience with her brother, but was afraid to relate the experience to anyone.

The trial court accepted the PSI report as submitted and then heard testimony. The complainant testified that appellant came from Brooklyn to live with her family in 2004 to help her step-father and her mother with their business. She said that he sexually assaulted her three times: the first two incidents were in her brother's room, and the third was in her own room. Her step-father, who had overheard appellant and the complainant whispering, asked about the whispering, and the complainant told him what had been happen-

ing. Appellant told the parents that the sex was consensual, but they believed the complainant, who said that it was not.

The complainant's mother testified that she let appellant live with them because she had "heard that he had gotten into some trouble." But "it wasn't something he did and I guess the case was dismissed. And he needed to get out of New York to have a new chance." She was prepared to let him stay there until he could "get himself back on his feet." She trusted him because he was family. When she found out about the assaults, she took the complainant to the emergency room and contacted the police.

The complainant's step-father testified that, when he found out about the assaults, he literally threw appellant out of the house. Nevertheless, he thought probation would be appropriate, in part because his nephew was "still a young man beginning his life."

Appellant's step-father, Ricardo Buchanan, testified for appellant. He said that he learned about the assaults when appellant came back to New York. Appellant admitted that he had had sex with a minor; he never denied it. Buchanan thought that appellant could comply with probation conditions.

Appellant testified that he was back living in Brooklyn. He acknowledged that he'd "made a big mistake" by having "sex with a minor." He apologized. He said he told the PSI report writer that his mother was initially worried about him being around his little sister because of the case, but that he still baby-sat his little sisters and brother. Appellant testified that he did not force himself on the complainant and that he had sex with the complainant twice rather than three times. Appellant stated that each time that he had sex with the complainant it was because she approached him. According to appellant, the complainant asked him to

have sex with her. Appellant said that he smokes marijuana about every two days, and continued to do so following his arrest in this case.

Defense counsel then asked for probation, and the State asked for imprisonment. The trial court then stated the following:

I've reviewed the presentence investigation report and all the submissions as well as heard the testimony from both the State and the defense. And one of the things that you said is that essentially she asked you for sex and you—and you're the one that obliged her, is essentially the way it came out. The fact is is that you're 21 years old. And if a 14–year–old asks you for sex, it's just—it's your—it's rape. There's no other way to put it other than rape.

22 years old, you didn't have a job. They gave you a job. Two kids in New York that you can't support. And the most troubling thing is you want—is that—you know, if you really felt it was wrong, you wouldn't have done it three times. You wouldn't have done it twice. Not only—I mean, not once, but twice then a third time. And I'm sorry, but that is—that's—she's a 13–year–old girl. Probably the most vulnerable time in her life is right now. And I can only imagine the destruction that you've caused with your own selfishness.

And I respectfully disagree with your attorney. I don't think that probation is at all appropriate on the facts that I've heard. And I think that you should go to prison for what you've done.

The trial court then sentenced appellant to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Appellant filed a motion for new trial asserting that the PSI report "contained totally unfounded allegations from [the

complainant's mother], that the Defendant had molested his own sister." Appellant attached an affidavit from his sister, Chyva Clarke. In this affidavit, Chyva noted the complainant's mother's statement in the PSI report that Chyva told her that Chyva "hated [appellant] for what he had done to the complainant." In her affidavit, Chyva stated that she never said that she hated appellant. Chyva stated that she does not condone what appellant did but that she loves him and she does not think he should have been sentenced to prison. Chyva testified that her brother had never done anything inappropriate with her, sexually or otherwise. She also said: "I hardly know [the complainant's mother]. For her to have any 'intuition' about me, or about my relationship with my brother, is very presumptuous." In his motion, appellant alleged that: (1) his counsel was not timely given the PSI report resulting in a denial of effective assistance of counsel, (2) he was denied his right to effectively confront the witness used against him, and (3) the alleged extraneous offense was inadmissible because it was not proven beyond a reasonable doubt. Although appellant requested a hearing, the trial court denied this request.

When the case reached this court on appeal, we concluded that appellant timely filed and presented his motion for new trial alleging ineffective assistance of counsel and that a hearing was necessary to develop the facts supporting these claims. Therefore, we abated the appeal so that the trial court could conduct a hearing on the motion for new trial.

On abatement, the trial court conducted an oral hearing on the motion for new trial. At that hearing, however, appellant alleged, for the first time, that the prosecutor knew that the information regarding the alleged extraneous offense was false before the sentencing hearing, and thus had a duty to inform defense counsel of this exculpatory evidence, namely the falsity of the statements regarding this alleged extraneous offense.

On original submission, appellant asserted that the trial court abused its discretion by denying his motion for new trial. However, appellant did not base this argument upon any ground in his written motion for new trial. Instead, appellant based his argument upon (1) an alleged due process violation under *Mooney v. Holohan*, 294 U.S. 103, 112–13, 55 S.Ct. 340, 79 L.Ed. 791 (1935) and its progeny ("*Mooney* violation"); and (2) an alleged due process violation under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) and its progeny ("*Brady* violation").[1] This court held that appellant failed to preserve error because (1) appellant did not assert this complaint in his motion for new trial and he never amended this motion; and (2) even if appellant's arguments at the hearing on the motion could be considered, appellant did not assert the same complaint at the hearing as he did on appeal. *See Clarke v. State*, 233 S.W.3d 574, 577–80 (Tex.App.Houston [14th Dist.] 2007), *rev'd* 270 S.W.3d 573, 583 (Tex.Crim.App.2008). The Court of Criminal Appeals granted review and concluded that, even though no written amendment to appellant's motion was ever filed, the State's failure to object to appellant's oral arguments during the hearing resulted in an amendment of appellant's motion for new trial, which, though untimely, still preserved error given the State's failure to object. The high court further held that, even though appellant did not refer to any constitution or any

---

1. Though it has been suggested that the *Mooney* line of cases was incorporated into the *Brady* rule, these two lines of decisions are distinct. *See Ramirez v. State*, 96 S.W.3d 386, 394 (Tex.App.-Austin 2002, pet. ref'd).

case involving a constitutional violation, his argument at the hearing was sufficiently similar to his appellate complaint to preserve error. *See Clarke v. State*, 270 S.W.3d 573, 577–83 (Tex.Crim.App.2008). The Court of Criminal Appeals reversed this court's judgment and remanded for consideration of the merits of this appeal. *See id.* at 583.

## II. STANDARD OF REVIEW

■ The trial judge is the trier of fact at a hearing on a motion for new trial, and we will not disturb the judge's findings unless an abuse of discretion is demonstrated. *Charles v. State*, 146 S.W.3d 204, 208 (Tex.Crim.App.2004), *superseded in part on other grounds by* Tex.R.App. P. 21.8(b), *as recognized in State v. Herndon*, 215 S.W.3d 901, 905 n. 5 (Tex.Crim.App. 2007). The appellate court does not substitute its judgment for that of the trial court, but rather decides whether the court's decision was arbitrary or unreasonable. *Id.* We view the evidence in the light most favorable to the trial court's ruling, deferring to its credibility determinations, and we presume all reasonable factual findings that could have been made in support of the court's ruling. *Id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support its ruling. *Id.*

## III. ISSUE AND ANALYSIS

Appellant presents a single issue:

The prosecutor deliberately deceived the trial court during the punishment phase by allowing evidence concerning an alleged extraneous offense known by the prosecutor to be false, to remain in the PSI report, in violation of the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the Texas Constitution.

■ Appellant asserts that the trial court abused its discretion by denying his motion for new trial based upon an alleged *Mooney* violation and an alleged *Brady* violation. To establish a *Mooney* violation, appellant had to show that (1) the State knowingly used certain testimony; (2) the testimony was false and misleading to the trier of fact; and (3) the testimony was material. *See United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397–98, 49 L.Ed.2d 342 (1976); *Ex parte Castellano*, 863 S.W.2d 476, 479–85 (Tex.Crim.App. 1993); *Ramirez v. State*, 96 S.W.3d 386, 394–96 (Tex.App.-Austin 2002, pet. ref'd). The State's knowing use of such testimony will be found to be material unless the court is convinced beyond a reasonable doubt that this testimony did not contribute to the conviction or punishment in question. *See United States v. Bagley*, 473 U.S. 667, 679–80, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985); *Ex parte Castellano*, 863 S.W.2d at 485; *Ramirez*, 96 S.W.3d at 394, 396.

■ To establish a *Brady* violation, appellant had to show that: (1) the State failed to disclose evidence in its possession; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Webb v. State*, 232 S.W.3d 109, 114 (Tex.Crim.App.2007). The evidence may be material to either guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97. The State's duty to disclose such evidence applies irrespective of the good faith or bad faith of the prosecution, and regardless of whether the defendant previously has requested it. *Id.; Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim.App.2006).

■ At the hearing on appellant's motion for new trial, no live testimony was

given; however, appellant offered and the trial court admitted six exhibits—two affidavits from the complainant's mother, the affidavit from appellant's sister (Chyva Clarke) that was described above, an affidavit from appellant's trial counsel, a letter from appellant's appellate counsel requesting the clerk to prepare a supplemental clerk's record, and a copy of the PSI report.

In her affidavit of May 17, 2006, the complainant's mother states the following:

- She cannot excuse what appellant did to her daughter, and it is appropriate for appellant to spend some time in jail.
- She believes that the ten-year sentence that the trial court gave appellant was "much too harsh."
- The complainant's mother believes that it would be more appropriate to put appellant on probation in May 2006, after he has served a few months in prison.
- Even though her daughter is the complainant, she believes that the trial court's ten-year sentence is too harsh a sentence in this case for a person with no prior criminal record.
- Although what appellant did was wrong, having him serve a ten-year sentence is excessive and will create a bigger problem with appellant than there already is.
- As to the statement regarding her "intuition" that is described in the PSI report, she did not make this statement or anything else that could have been construed as a suspicion that appellant may have acted inappropriately towards Chyva Clarke.
- The complainant's mother has no reason to think appellant acted inappropriately towards Chyva Clarke, sexually or in any other way. The complainant's mother had no such "intuition," and never said that she

did. The complainant's mother did not correct this when she testified at the sentencing hearing because, at that time, she did not know of the statement about her alleged intuition in the PSI report. If she had been asked about this issue, she would have explained that she never made any comment about appellant and his sister that could be interpreted in such a way.

In her affidavit of December 5, 2006, the complainant's mother made some of the same statements contained in her first affidavit; however, she added the following new paragraph:

Prior to the sentencing hearing in this case, the prosecutor, Ms. Spalding, asked me something about whether I knew anything about [appellant] molesting or abusing his sisters in New York. I replied that I knew nothing about that. I was puzzled by the question, but assumed that it must be something that is routinely asked in cases like this. However, I had no idea that in the written presentence investigation report, I was quoted as saying that I had an intuition that [appellant] had engaged in improper conduct with his sister. If I had known that this was in writing, in the report, I would have asked that it be removed. I never said such a thing. I have never heard of any such behavior on [appellant's] part toward anyone other than my daughter.

In his affidavit, appellant's trial counsel states the following:

- He was not able to review the PSI report until the morning of the sentencing hearing. Upon reviewing the report, he noticed the statement regarding the complainant's mother's "intuition."
- Because the hearing was to begin shortly and because appellant's family

lived in New York, trial counsel was unable to investigate whether appellant committed an extraneous offense against his sister.

- At the beginning of the sentencing hearing, counsel objected to this statement as being "conjecture."
- Because he was not sure whether appellant had engaged in any criminal conduct against his sister in the past, counsel did not want to draw undue attention to the statement regarding the complainant's mother's intuition.
- Counsel assumed that the complainant's mother had made the statement attributed to her in the PSI report. Counsel was ready to object to any testimony by the complainant's mother in this regard and to cross-examine her if this testimony were admitted. However, the complainant's mother did not mention this matter during her testimony on direct examination, and counsel thought the best trial strategy under the circumstances was not to go into this matter on cross-examination.
- The prosecutor, Ms. Spalding, never told counsel that the complainant's mother had denied making the statement attributed to her in the PSI report. If the complainant's mother had told the prosecutor that the statements attributed to her in the report were not true, that would constitute exculpatory information of which counsel would expect the prosecutor to inform him that this statement was false or a mistake.
- Counsel was never provided with the exculpatory information that the complainant's mother had not made the statement attributed to her in the PSI report. If he had been, he would have made sure that the trial court knew that the extraneous offense alluded to in the report was unfounded and not to be considered in assessing punishment.

The State did not present any evidence at the motion-for-new-trial hearing.

In her second affidavit, the complainant's mother testified that the prosecutor knew before the sentencing hearing that the complainant's mother did not make the statement attributed to her in the PSI report. For appellant to establish a *Mooney* violation or a *Brady* violation, the trial court had to credit this testimony because it was the only evidence at the hearing relating to the first element of each of these alleged violations. *See Webb*, 232 S.W.3d at 114; *Ex parte Castellano*, 863 S.W.2d at 485. The trial court observed the complainant's mother's demeanor and appearance during her testimony at the sentencing hearing. By denying the motion for new trial, the trial court impliedly found that the complainant's mother's testimony lacked credibility. *See Charles*, 146 S.W.3d at 213; *State v. Ross*, 32 S.W.3d 853, 856–58 (Tex.Crim.App.2000).

In a motion-for-new-trial hearing, the trial judge may believe or disbelieve all or part of a witness's testimony, even if that testimony is by affidavit and is uncontroverted. *See Charles*, 146 S.W.3d at 210–13; *Ross*, 32 S.W.3d at 856–58. The trial judge reasonably could have disbelieved the part of the complainant's mother's testimony that provided the only proof of an essential element that appellant needed to prove as to the alleged *Mooney* violation and the alleged *Brady* violation. *See Clarke*, 270 S.W.3d at 581 (agreeing with statement in dissenting opinion that, if the trial court in this case had credited appellant's evidence, then it would have granted his motion for new trial, but stating that this issue goes to the merits of this appeal rather than to the preservation-of-error issue); *Charles*, 146 S.W.3d at 213; *Ross*, 32 S.W.3d at 858.

In addition, the statement in question is a single, unsworn statement in the PSI

report. According to this statement, the complainant's mother said "she had an intuition that perhaps the defendant's sister had a similar experience with her brother, but was afraid to relate the experience to anyone." Neither the State nor appellant argued at the punishment hearing that the trial court should base its assessment of punishment on this statement or on any alleged conduct by appellant towards his sister. Appellant testified and, among other things, minimized his conduct and asserted that the complainant asked him to have sex with her, contrary to the complainant's testimony. The trial judge did not state that he was basing his assessment of punishment on the statement in the PSI report, even though he recited in open court his reasoning in assessing punishment. Under the respective standards for materiality regarding the alleged *Mooney* violation and the alleged *Brady* violation, the trial court reasonably could have concluded that the testimony or evidence in question was not material to the trial court's decision to assess punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

For the reasons stated above, we conclude that the trial court did not abuse its discretion by denying appellant's motion for new trial. We overrule appellant's sole issue and affirm the trial court's judgment.